Keith Altman (SBN 257309)
The Law Office of Keith Altman
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48334
(516) 456-5885
kaltman@lawampmmt.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| KENNETH EARL MOORE,<br><br>　　　　Plaintiff,<br>　　vs.<br>CERRITOS, DEPUTY SHERIFF, LOS ANGELES COUNTY SHERIFF DEPARTMENT, and INEZ, SERGEANT, LOS ANGELES COUNTY SHERIFF DEPARTMENT,<br><br>　　　　Defendants. | 2:19-cv-8946-DSF-JPR<br><br>**PLAINTIFF'S THIRD AMENDED COMPLAINT** |

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff KENNETH EARL MOORE (hereinafter, "Moore" or the "Plaintiff") hereby alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiff's federal law claims is founded upon 28 U.S.C. § 1331 [federal question jurisdiction] and 28 U.S.C. § 1343(a)(3) [federal civil rights jurisdiction]. All claims for violation of Plaintiff's rights under the laws and the United States constitution are brought pursuant to 42 U.S.C. § 1983.

2. Venue is proper under 28 U.S.C. § 1391 in that the incidents forming the basis of the complaint occurred within the general area of Los Angeles, which is located in the Central District of California.

## PARTIES

3. Plaintiff Kenneth Earl Moore ("Plaintiff") is a transgender woman currently incarcerated at the Richard J. Donovan Correctional Facility.

4. At all times relevant to the Complaint, Defendant CERRITOS ("Cerritos") was a Deputy Sheriff in the Los Angeles County Sheriff Department (hereinafter, "LASD"). All actions alleged herein by Cerritos were taken under color of state law and in the course and scope of his employment with LASD.

5. At all times relevant to the Complaint, Defendant INEZ ("Inez") was a Deputy Sheriff in the LASD. All actions alleged herein by Inez were taken under color of state law and in the course and scope of her employment with LASD.

6. At all times relevant set forth herein, all Defendants acted in concern and as agents of one another.

## FACTUAL ALLEGATIONS

7.      In early September of 2018, Plaintiff was a California Department of Corrections and Rehabilitation (hereinafter, "CDCR") parolee, both homeless and working as a sex-worker in west Los Angeles at Jefferson Boulevard and Crenshaw.

8.      Defendant Cerritos drove up to the Plaintiff in his car and propositioned the Plaintiff, offering $20.00 in exchange for the Plaintiff performing oral sex on him.

9.      The Plaintiff took the $20.00 and ran off without performing the requested sexual services.

10.     Defendant Cerritos then pursued the Plaintiff in his vehicle, yelling, "Hey, come back, you owe me!" from the window. However, the Plaintiff escaped.

11.     Approximately a week later, Defendant Cerritos was patrolling in his vehicle in the downtown area of Los Angeles known for being a hotbed of people working as sex-workers.

12.     Defendant Cerritos then approached the Plaintiff in his car wearing civilian clothes and angrily accused the Plaintiff, stating, "You owe me sex!"

13.     The Plaintiff informed Defendant Cerritos that she was waiting for a date and told him to leave her alone.

14.     At that point, Defendant Cerritos angrily got in his car and sped off.

15.     Later that evening, Defendant Cerritos, this time in the uniform Los Angeles Sheriff's Department (hereinafter, "LASD"), approached the Plaintiff pointing a handgun at her and stating, "Get in. I'm taking you to jail. If you run, I'll shoot you!"

16.     At that time, the Plaintiff got into Defendant Cerritos's vehicle and asked, "What are you arresting me for?"

17.  Defendant Cerritos replied that he was arresting her "for prostituting while on parole."

18.  Defendant Cerritos then drove the Plaintiff to a remote area, a blind spot near the downtown Los Angeles metro layover bus station.

19.  Defendant Cerritos pulled his handgun from his uniform holster utility belt and placed it against the Plaintiff's head.

20.  At that point, Defendant Cerritos then forced the Plaintiff to perform oral copulation at gunpoint.

21.  After the sexual assault, Defendant Cerritos then drove around with his handgun held between his thighs.

22.  Defendant Cerritos then drove the Plaintiff to a different isolated area and then stopped his vehicle and told her that she better keep her mouth shut, or he would kill her.

23.  Defendant Cerritos then stated, "You're on parole and can be easily found," while tapping his badge with his handgun.

24.  At that point, Defendant Cerritos then released the Plaintiff and allowed her to leave.

25.  Defendant Cerritos knew or should have known that it is unlawful to use his LASD uniform, badge, nameplate, and utility belt with a weapon to both influence an arrest and commit a criminal act and/or civil violative infringement upon a parolee under the jurisdiction of the CDCR, while imposing or acting under the color and authority of law.

26.  On September 19, 2018, the Plaintiff was arrested for the offense of Health and Safety Code 11352(a) – Transport/Sale of a Controlled Substance, and

was committed to the CDCR for a term of five (5) years in the Los Angeles County Jail (hereinafter, the "Jail") and for violating her parole.

27. On September 19, 2018, the Plaintiff was appropriately classified and housed as a transgender woman as per Jail policy and practice in accordance with CCR§§ 1050, 1006, and 1053 and Title 15 (safety and security isolated housing for high-risk transgender inmates).

28. On September 25, 2018, the California Board of Prison Hearings (hereinafter, the "BPH") revoked the Plaintiff's parole and assessed her a 155-day violation.

29. Afterward, in September of 2018, Defendant Cerritos was summoned to escort the Plaintiff. Upon seeing him, the Plaintiff became fearful and had an anxiety/panic attack caused by post-traumatic stress disorder (hereinafter, "PTSD") stemming from the sexual assault described above.

30. At that point, Defendant Cerritos seized the Plaintiff by her arm, and while escorting her and outside of the presence of other deputies, pushed the Plaintiff into a wall, pinning her with her right hand behind her back.

31. Defendant Cerritos then stated, "You faggot, dumb 20-dollar ass bitch! You ever pull a stunt like that again; I'll personally see that you disappear and come up missing in this jail. This is my house."

32. Defendant Cerritos then stated, "If you don't keep your mouth shut, I'll have you killed in here!"

33. On October 11, 2018, while housed in dorm 9500[1], the Plaintiff reported the sexual assault to several advocacy groups, and they in turn reported the sexual assault to the LASD.

34. Afterward, on the same day, the Plaintiff was ordered to participate in a "sexual assault video interview" conducted by Defendant Inez.

35. Defendant Inez threatened Plaintiff that if she pursued sexual allegations against Defendant Cerritos, she would be killed.

36. However, the Plaintiff informed Defendant Inez that she would continue to pursue this claim.

37. At that point, Defendant Inez became angry and called the Plaintiff a "crazy faggot" and told the Plaintiff that "[you are] not entitled to a sexual assault video."

38. Defendant Inez then also stated that, because the Plaintiff had chosen to pursue the sexual assault video interview against Defendant Cerritos, Defendant Inez would not provide the Plaintiff with the required referrals to medical for an administered sexual assault kit, nor evaluations by mental health staff, nor any access to the grievance process.

39. Defendant Inez informed the Plaintiff that she was now "her enemy" and that Defendant Inez would stand by Defendant Cerritos.

40. At that point, the sexual assault video was finally conducted.

41. On October 12, 2018, the Plaintiff filed a grievance reporting Defendant Cerritos for pre-arrest sexual assault (as described herein in Claim One), while

---

[1] Dorm 9500 (Specialized Housing) provides direct access to advocates and the grievance process, education treatment and care, Prison Rape Elimination Act (hereinafter, "PREA") staffing, clinical hormonal treatment, and support.

Defendant Cerritos was wearing his official LASD uniform and utilizing his service handgun to coerce her.

42. After filing the grievance, the Plaintiff learned that it had gone "missing."

43. On October 21, 22, 26, and 29, the Plaintiff refiled her sexual assault grievances. (attached hereto as **Composite Exhibit "A"**).

44. Defendant Inez later threatened the Plaintiff with physical violence and with removal from her classified assigned housing dorm (9500) to a mental health housing dorm (9300) for the sole purpose of retaliation against the Plaintiff for filing the allegations against Defendant Cerritos.

45. On or about October 30, 2018, Defendant Inez specifically stated, "I have mental health patients. I'll instruct them to physically deal with you since you're complaining and determined to get yourself hurt or killed! I can accommodate you. […] Since you relentlessly pursue your grievance against Deputy Cerritos, and I will with endless effort, physically stop you pursuing these grievances!"

46. Later that evening, on October 30, 2018, the Plaintiff, having been placed in dorm 9300, was physically attacked by an inmate/patient, who later informed the Plaintiff that a "lady deputy sergeant" gave him "a sack lunch" to hurt the Plaintiff. (*See* **Exhibit "B"**). Plaintiff suffered severe bodily injuries as a result of this attack.

47. On November 28, 2018, Defendant Inez again summoned the Plaintiff for another interview, wherein Defendant Inez stated, "So physical violence isn't enough for you, huh?"

48. The Plaintiff then politely stated to Defendant Inez that LASD detectives had just interviewed her about the sexual assault committed by Defendant Cerritos.

49. Defendant Inez became agitated, throwing her hands up in the air and stating, "You good-for-nothing, HIV-infested, dying, worthless piece of shit! No one will ever believe your claim of sexual assault against any deputy because you're just an inmate. […] Let me tell you what's going to happen. I am not allowing any of your grievances through to the grievance coordinator for processing! Neither will I allow you access to the law library, nor any legal mailing to the courts regarding this grievance. All your mail will be routed to me to the trash can."

50. Defendant Inez then denied the Plaintiff access to an available grievance process and administrative remedy, as indicated in **Exhibit "D."**

51. Defendant Inez also denied the Plaintiff an available law library, fully equipped to assist her, as indicated in **Exhibit "C."**[2]

52. In retaliation for Plaintiff's filing of grievances, Defendant Inez then further denied the Plaintiff access to both the Los Angeles Superior Court Civil Division and the United States District Court by returning her legal mail to her ripped up in a manila envelope routed to the Plaintiff through sealed Jail Inter-Departmental Mail, thus denying the Plaintiff's First Amendment rights.

53. On January 17, 2019, the Plaintiff informed Sheriff Villanueva that she was the victim of a sexual assault at the hands of Defendant Cerritos.

---

[2] While an inmate is housed in mental health, he or she is temporarily restricted from any and all legal endeavors. (*See*, LASD Rule 8.42 (h), eff. July 1, 2017).

54. The Plaintiff also informed Sheriff Villanueva that she was being harassed and retaliated against by Defendant Inez because of her efforts to exhaust the available LASD grievance process.

55. Plaintiff sought Sheriff Villanueva's intervention to prevent further harm.

56. On February 19, 2019, Sheriff Villanueva responded directly to the Plaintiff's submitted grievance, as indicated in **Exhibit "E,"** pages 3 and 4.

57. Sheriff Villanueva's response was disingenuous and impersonal, and not at all assuring to the Plaintiff that she was safe and secure, nor pledging to use the authority of his office to remove Defendant Inez's impediments to the Plaintiff exhausting her administrative remedies, or to protect the Plaintiff.

58. Sheriff Villanueva knew or should have known that the Prison Rape Elimination Act of 2003 (hereinafter, "PREA") applied to the Jail and specifically to the Plaintiff's allegations of sexual assault and threatening verbal abuses at the hands of Defendant Cerritos and Defendant Inez.

59. Sheriff Villanueva's direct response to the Plaintiff proves that he failed to act or intervene, although having direct knowledge of the Plaintiff's allegations.

60. Sheriff Villanueva knew or should have known that his failure to intervene on October 11, 2018, December 16, 2018, December 23, 2018, and January 17, 2019, to ensure the Plaintiff's safety, even where his office was contacted by outside community advocates. This failure subjected the Plaintiff to continuous serious risk of harm, deliberate attacks, harassment, and death threats, both at the hands of his staff and officials, as well as by other inmates.

61. Sheriff Villanueva failed to enforce his policy and practice (*See*, Title 15, CCR. §§ 1006, 1050, & 1053; Government Code § 845.6, 26605) to segregate and protect transgender inmates.

62. Furthermore, concerning all transgender prisoners in Sheriff Villanueva's Jail that are covered by the PREA category of "potentially vulnerable deserving special attention and monitoring," it is Sheriff Villanueva's custom, policy, and practice to justifiably place those inmates "in accordance with the Title 15, CCR §1050).

63. The Plaintiff needed high-risk security housing with a sergeant escort and classification of [K5GC] or [K-10][3], which is Sheriff Villanueva's responsibility pursuant to his policies with respect to segregating inmates who are targets for assault, to obtain the objective of protecting the welfare and safety of inmates and staff.

64. Defendant knew or should have known that under the PREA requirements in 42 U.S.C. § 15601(13) and 42 U.S.C. § 15602(1), he was required to ensure that his Jail facilities adopt a zero-tolerance approach to sexual assault and harassment.

65. Although Sheriff Villanueva had such a policy, he failed to enforce that policy with respect to the incidents of October 11, 2018, December 16, 2018, December 23, 2018, and January 17, 2019.

66. Sheriff Villanueva knew or should have known as early as October 11, 2018, upon being contacted by PREA advocates from the Lesbian, Gay, Bisexual, and Transgender community (hereinafter, "LGBT") that there was an immediate

---

[3] General population keep away/transgender/protective custody.

penological interest existing to require separating the Plaintiff from Defendant Cerritos and Defendant Inez within these Jail facilities.

67. Sheriff Villanueva's failure to separate the Plaintiff from Defendant Cerritos and Defendant Inez subjected the Plaintiff to harassment, threats of physical harm, and retaliation with the intent to thwart the sexual assault redress and grievance procedure.

68. Sheriff Villanueva's failure to intervene on October 11, 2018, December 16, 2018, December 23, 2018, and January 17, 2019, essentially had the effect of removing Plaintiff's access to the available grievance process and administrative remedies and/or making the same non-existent, at least with respect to Plaintiff.

69. As discussed in more detail above and shown through Exhibits "A" through "E," Plaintiff exhausted her administrative remedies before filing the instant lawsuit.

## CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF
### Sexual Battery in Violation of Cal. Code § 1708.5 Against Defendant Cerritos

70. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as if fully set forth herein.

71. Cal. Civ. Code Section 1708.5(a) provides: A person commits a sexual battery who does any of the following: (1) acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results. (2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a

sexually offensive contact with that person directly or indirectly results. (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results. Cal. Civ. Code Section 1708.5(d) defines "intimate part" as the sexual organ, anus, groin, or buttocks of any person, or the breast of a female.

72. Cal. Civ. Code Section 1708.S(f) defines "offensive contact" to mean contact that offends a reasonable sense of personal dignity.

73. Plaintiff alleges that Defendant Cerritos committed acts of civil sexual battery in violation of Cal. Civ. Code Section 1708.5, when on or about September 15, 2018, Defendant Cerritos willfully, maliciously, intentionally, and without the consent of Plaintiff subjected her to forcefully perform oral sex against her will, without her consent, and despite her express objection.

74. As a direct and/or proximate result of Defendant's unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress, and anxiety, all in an amount exceeding the jurisdictional minimum of the Court according to proof at trial.

75. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered economic harm, loss of earnings, and other damages, all in an amount that exceeds the jurisdictional minimum of the Court, according to proof at trial.

76. The aforementioned conduct by Defendant was willful, wanton, and malicious. At all relevant times, Defendant acted with conscious disregard of the Plaintiff's rights and feelings. Defendant also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or

humiliation to the Plaintiff. Plaintiff is further informed and believes that Defendant intended to cause fear, physical injury, and/or pain and suffering to the Plaintiff.

77. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof at trial.

## SECOND CLAIM FOR RELIEF
## LIABILITY OF ALL DEFENDANTS UNDER
## 42 U.S.C. § 1983
## (RETALIATION IN VIOLATION OF THE FIRST AMENDMENT)

78. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as if fully set forth herein.

79. At all times, except for the sexual assault by Cerritos, Defendants were acting under color of state law as employees of the Los Angeles County Sheriff's Office.

80. As discussed in more detail above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Plaintiff of her rights, privileges, and immunities secured by the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

81. Plaintiff engaged in Constitutionally protected conduct, including filing grievances and filing lawsuits against Defendant Cerritos.

82. Plaintiff was threatened with violence by Defendants if she did not "keep her mouth shut."

83. Plaintiff was threatened with violence by Defendants if she complained of Defendants' conduct.

84. Plaintiff was attacked and injured by another inmate. This attack was ordered by Defendant Inez in retaliation for Plaintiff exercising her First Amendment right to file sexual assault grievances against Defendant Cerritos.

85. Plaintiff was retaliated against by Defendants as punishment for filing grievances.

86. This retaliation would serve as a deterrent to a person of ordinary firmness from engaging in protected conduct.

87. The retaliation was motivated in part by the protected conduct.

88. There was a causal connection between Plaintiff's Constitutionally protected conduct and the adverse retaliatory actions taken by Defendants against Plaintiff.

89. Defendants' actions in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.

90. Plaintiff is entitled to recover punitive damages against Defendants in their individual capacities in an amount greater than $1,000,000.

91. Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.

### THIRD CLAIM FOR RELIEF
### LIABILITY OF DEFENDANT CERRITOS UNDER
### 42 U.S.C. § 1983
### (FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT)

92. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as if fully set forth herein.

93. At all times, except for the sexual assault by Cerritos, Defendant Cerritos was acting under color of state law as an employee of the Los Angeles County Sheriff's Office.

94. As discussed in more detail above, Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Plaintiff of her rights, privileges, and immunities secured by the Fourth to the United States Constitution and 42 U.S.C. § 1983.

95. On or about September 15, 2018, Defendant Cerritos, in the uniform of the Los Angeles Sheriff's Department (hereinafter, "LASD"), approached the Plaintiff pointing a handgun at her and stating, "Get in. I'm taking you to jail. If you run, I'll shoot you!"

96. At that time, the Plaintiff got into Defendant Cerritos's vehicle and asked, "What are you arresting me for?"

97. Defendant Cerritos replied that he was arresting her "for prostituting while on parole."

98. Defendant Cerritos then drove the Plaintiff to a remote area, a blind spot near the downtown Los Angeles metro layover bus station.

99. Defendant Cerritos pulled his handgun from his uniform holster utility belt and placed it against the Plaintiff's head.

100. At that point, Defendant Cerritos then forced the Plaintiff to copulate orally at gunpoint.

101. After the sexual assault, Defendant Cerritos then drove around with his handgun held between his thighs.

102. Defendant Cerritos then drove the Plaintiff to a different isolated area and then stopped his vehicle and told her that she better keep her mouth shut, or he would kill her.

103. Defendant Cerritos then stated, "You're on parole and can be easily found," while tapping his badge with his handgun.

104. At that point, Defendant Cerritos then released the Plaintiff and allowed her to leave.

105. Defendant Cerittos detained Plaintiff for such an unreasonable amount of time that Defendant officers constructively placed Plaintiff under arrest.

106. Defendant Cerritos lacked probable cause to arrest Plaintiff.

107. Defendant Cerritos did not obtain a warrant to arrest Plaintiff.

108. Defendant Cerritos deprived Plaintiff of her Fourth Amendment rights of being secure in her person by arresting her

109. Plaintiff's arrest was wrongful, without probable cause, and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

110. The actions of Defendant Cerritos proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering, and mental and emotional distress.

111. Defendant Cerritos acted willfully, knowingly and purposefully, and/or with deliberate indifference to deprive the Plaintiff of his Constitutional Rights.

112. The actions of Defendant Cerritos in his individual capacity was intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages in an amount greater than $1,000,000.

113. Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.

## FOURTH CLAIM FOR RELIEF
## LIABILITY OF ALL DEFENDANTS UNDER
## 42 U.S.C. § 1983
## (CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT)

114. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as if fully set forth herein.

115. At all times, except for the sexual assault by Cerritos, Defendants were acting under color of state law as employees of the Los Angeles County Sheriff's Office.

116. At all times that Plaintiff was incarcerated in the Los Angeles County Jail, Plaintiff was serving a sentence for offenses for which Plaintiff had already been convicted.

117. Because Plaintiff was a convicted prisoner at all times Plaintiff was incarcerated in the Los Angeles County Jail, Plaintiff was entitled to protection under the Eighth Amendment.

118. Even if Plaintiff is not entitled to the protection of the Eighth Amendment, Plaintiff is entitled to protections at least as extensive under the Fourteenth Amendment as a pretrial detainee in the Los Angeles County Jail.

119. 84. Plaintiff was attacked and injured by another inmate. These inujuries were both physical and emotional in nature. This attack, ordered by

Defendant Inez, served no penological purpose but was maliciously ordered to cause harm to Plaintiff.

120. Each of the Defendants was aware that Plaintiff was a transgender female and was particularly vulnerable.

121. As discussed in more detail above, Defendants acted with deliberate indifference, contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Plaintiff of her rights, privileges, and immunities secured by the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

122. Defendants' actions in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.

123. Plaintiff is entitled to recover punitive damages against Defendants in their individual capacities in an amount greater than $1,000,000.

124. Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.

## JURY DEMAND

Plaintiff hereby demands that this matter be tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Compensatory damages to Plaintiff for injury, emotional distress, and for medical and psychological expenses;

2. Punitive damages against Defendants INEZ and CERRITOS, and each of them;

3. Attorney's fees and costs; and

1 | 4. Such other and further relief as the court deems just and proper.
Respectfully Submitted,

Dated:  February 7, 2021
Farmington Hills, MI

Law Office of Keith Altman
By:   */s/ Keith Altman*
Keith Altman (SBN 257309)
30474 Fox Club Drive
Farmington Hills, MI 48331
(516) 456-5885
kaltman@lawampmmt.com

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

Undersigned hereby states that on February 7, 2021, he caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all counsel of record through the CM/ECF system.

  /s/ Keith Altman